**DICKISON v. MORRIS et ux.**

No. 11838.

Court of Civil Appeals of Texas. San Antonio.

April 14, 1948.

Rehearing Denied May 19, 1948.

William N. Hensley and Austin F. Anderson, both of San Antonio, for appellant.

Charles W. Barrow, Wm. C. Church and Burton W. Morris, all of San Antonio, for appellees.

## PER CURIAM.

P. E. Dickison, the Tax Assessor-Collector of Bexar County, has appealed from a peremptory writ of mandamus commanding him to forthwith issue voting poll tax receipts for the year 1947 to appellees, Burton W. Morris and his wife, Frances O. Morris.

It is elementary that mandamus will not lie to control a discretionary power or authority of a public official. The order appealed from is founded upon the theory that the tax assessor-collector had refused to perform a purely ministerial duty, and hence could be ordered to so perform by a judicial tribunal.

The statutory enactment involved in the case is an Act of the 47th Legislature, 1941, p. 183, ch. 132, § 1, Article 2961, Vernon's Ann.Civ.Stats., which in part reads as follows: "A taxpayer may pay his poll tax by a remittance of the amount of the tax through the United States mail to the County Tax Collector, accompanying said remittance with a statement in writing showing all the information necessary to enable the Tax Collector to fill out the blank form of the poll tax receipt, which statement must be signed by the party who owes the poll tax under oath, but the husband may sign for the wife and in like manner the wife may sign for the husband, and the Tax Collector shall issue and mail to the taxpayer at his last known address a poll tax receipt, or, if requested to do so by the taxpayer in writing, the Collector may hold said receipt to be delivered to the taxpayer in person. * * *"

The facts are undisputed and covered by stipulation.

Appellees are both over twenty-one years of age and under sixty years of age. Both are qualified voters under Article 2955, subject to the payment of a poll tax and not disqualified under Article 2954.

On January 27, 1948, appellee Burton W. Morris mailed a cashier's check for $3.50 to the tax assessor-collector as payment for his and his wife's 1947 poll taxes. The parties stipulate that this was a legal tender. Along with the check Morris mailed an affidavit which contained the following form of inquiry:

Native Born } Citizen of United States
Naturalized } and was born in ———

The tax assessor-collector received the check and affidavit on January 28, 1948, but on the seventh day of February returned the check to Morris with a form letter stating that the tax assessor-collector regretted his inability to issue the requested poll tax receipts for "the reason checked below." A number of reasons were listed in the form letter, but the one checked was, "Birthplace omitted, must have name of State."

On February 13, 1948, appellee Burton W. Morris presented to the tax assessor-collector an affidavit stating that he was born in Little Rock, Arkansas, and that his wife was born in Sullivan, Indiana. He requested that proper poll tax receipts thereupon be issued. The tax assessor-collector refused to issue the receipts as the time specified for the payment of poll taxes (between the first day of October and the first day of February following) had expired. Article 2959.

One of the qualifications for voting in Texas prescribed by Article 2955 is that a person "shall be a citizen of the United States."

The poll tax receipt must disclose whether a person is a citizen of the United States

or not. If it appears from the information required on the poll tax receipt that the person is an alien, then a non-voting receipt is issued upon which the word "alien" is printed in red ink. Article 2965.

It is clear that on or before January 31, 1948, the tax assessor-collector did not have sufficient information before him in the form of the affidavit permitted by statute so that he could have issued to appellees a statutory voting poll tax receipt.

It is equally clear that on February 13, 1948, the tax assessor-collector did have sufficient proof in affidavit form that appellees were natural born citizens of the United States.

 The controlling question may be stated as follows:

Appellees had tendered the amount of money due for their poll taxes prior to February 1, 1948, without, however, furnishing the tax assessor-collector the necessary information for the issuance of receipts, did the supplying of such omitted information thereafter make it the ministerial duty of the tax assessor-collector to issue poll tax receipts?

The answer to this question depends upon whether that part of Art. 2961, Vernon's Ann.Civ.Stats., reading: "accompanying said remittance with a statement in writing showing all the information necessary to enable the Tax Collector to fill out the blank form of the poll tax receipt," shall be construed as being mandatory or merely directory.

It occurs to us that this language must be given mandatory effect. It is clear from a consideration of all the provisions of the statutes relating to the payment of poll taxes that it is the intention of the Legislature that any citizen who expects to vote in any election during the year should pay his poll tax before February 1st. It is clear that there is no objection to the tax assessor-collector actually issuing the poll tax receipt after February 1st, if the taxpayer has done all that is required of him in the paying of his poll tax before that date. Parker v. Busby, Tex.Civ.App., 170 S.W. 1042.

It is important that there should be a definite time when all activity should cease with reference to the payment of poll taxes so that the preparation of the list of voters may be commenced. The Legislature has set this day as January 31st. If we should hold in this case that amended affidavits could be made and furnished to the tax assessor-collector after January 31st, then the assessor-collector could never be certain when the payment of poll taxes was over and when he should commence the preparation of the list of voters. If the information which would enable him to issue the poll tax receipt could be furnished him ten or twenty days after February 1st, then why not forty or eighty days, or 160 or 320 days? Who would be authorized to draw the line?

The payment of a poll tax is intended not merely as a revenue matter, but also a measure to guard the purity of the ballot. The poll tax list prepared by the tax assessor-collector furnishes a list of qualified and registered voters long before the time of the election. This, or some other method of registration of voters, is absolutely necessary if there are to be honest elections.

Art. 2975, Vernon's Ann.Civ.Stats., requires the tax assessor-collector to make up a list of the names of persons who have paid their poll taxes before February 1st; such lists to be in alphabetical order, each voter being given a number, a description of each voter being given as to his residence, his voting precinct, length of his residence in the State and County, his race, occupation, post-office address. If the names of the voters are to be in alphabetical order the list must be complete in each precinct before the preparation of the list can begin.

Heavy penalties are prescribed for tax assessor-collectors who fail to perform their duties in the issuing of poll tax receipts. For instance, art. 199, Penal Code, provides that: "Any tax collector who delivers a poll tax receipt or certificate of exemption to any one except the one entitled thereto and at the time when the tax is paid or the certificate of exemption is applied for, except as specially permitted by law shall be fined not less than one hundred nor more than one thousand dollars, and shall be removed from office."

Art. 200a—1, Vernon's Penal Code, provides: "Any Tax Collector charged with

**390**

the duties as hereinabove provided who shall fail or refuse to perform such duties, or who shall unlawfully deliver a poll tax receipt or certificate of exemption to anyone, shall be punished as now provided in Articles 198, 199, and 200 of the Penal Code of the State of Texas."

With such severe penalties prescribed for any violation of the law with reference to the payment of poll taxes and the issuing of poll tax receipts, it is apparent that such laws must be given a strict construction as being mandatory.

The enactment of art. 2961, supra, in 1941, furnished to a citizen a method by which he could pay his poll tax through the United States mail, but if he wishes to avail himself of this method he must strictly comply with the terms of the law that extends this privilege to him.

· The judgment of the trial court will be reversed and judgment here rendered denying the issuance of the writ of mandamus.